# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER A. HOCHSTEIN, et al., | ) | Case No. Civil Action No. 04-73071; |
| | ) | 08-10331 |
| | ) | |
| Plaintiff, | ) | HONORABLE PAUL D. BORMAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DONALD A. |
| | ) | SCHEER |
| MICROSOFT CORPORATION, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MICROSOFT CORPORATION'S BRIEF IN SUPPORT
## OF PROPOSED CLAIM CONSTRUCTION JURY INSTRUCTIONS

David T. Pritikin
Richard A. Cederoth
Laura L. Donoghue
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, Illinois 60603
(312) 853-7000
Fax (312) 853-7036

Robert J. Franzinger (P25539)
William F. Kolakowski (P55906)
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, Michigan  48243
(313) 568-6990
rfranzinger@dykema.com

*Attorneys for Defendant*
*Microsoft Corporation*

On June 18, pursuant to discussion at the May 29 Pretrial Conference, the parties submitted a joint Motion regarding claim construction decisions as a basis for instructing the jury.  Microsoft submits this brief to explain why the statements that it identified in the Joint Submission constitute the effective rulings to date on the claim constructions issues.  As noted below, Microsoft is not urging new constructions or adopting the prior rulings as its own.  Microsoft's continued position as to the correct construction of the disputed terms of claim 39 is set forth in Appendix A.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................................. iii

I.      "VIDEO GAME COMMUNICATIONS CIRCUIT" ......................................................2

      A.     *Instructions Specific to "Communications Circuit"*..................................... 2

      B.     *Instructions Concerning Figure 2 and Particular Configurations*....................... 4

II.     PLAINTIFFS' REMAINING PROPOSED CONSTRUCTIONS
       IMPROPERLY ARE BASED ON SPECIAL MASTER JANICKE'S
       FACTUAL ANALYSIS FOR DENYING SUMMARY JUDGMENT ........................5

      A.     *"Electrically Connected"* .......................................................... 7

      B.     *"Modem Circuit"*...................................................................... 10

      C.     *"Voice Over Data Circuit."*........................................................ 12

      D.     *"Communication Signals"*.......................................................... 13

      E.     *"Filtering Voice Signals from Communication Signals"* ...................... 15

      F.     *"Transmitting Both to Said Modem Circuit"* ................................... 17

## TABLE OF AUTHORITIES

### CASES

*Bicon Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006)..............................................................................3, 9, 10

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009).................................................................................5

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004).........................................................................5, 6, 16

*Scott v. Harris*,
    550 U.S. 372 (2007)..............................................................................................6, 16

*In re Swartz*,
    232 F.3d 862 (Fed. Cir. 2000)...............................................................................11

### RULES

Federal Rule of Civil Procedure 53 ...................................................................12

### OTHER AUTHORITIES

August 21, 2008 Order (Dkt. No. 320) ...................................................... passim

Joint Submission on Agreed and Disputed Claim Construction Issues and Request
    for Teleconference (Jun. 18, 2009) (Dkt. No. 465) ............................................. passim

Rudolf F. Graf, Modern Dictionary of Electronics (7th ed. 1999) ......................................8

Richard D. Grauer, Special Master Report and Recommendation on Construction
    of Claim 39 (May 16, 2009) (Dkt. No. 367)................................................................2, 3

Paul M. Janicke, Special Master's Report (Jan. 26, 2007) (Dkt. No. 257) ............... passim

U.S. Patent No. 5,292,125 .........................................................................9, 11

ii

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

August 21, 2008 Order (Dkt. No. 320)

*Bicon Inc.  v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006)

U.S. Patent No. 5,292,125

Paul M. Janicke, Special Master's Report (Jan. 26, 2007) (Dkt. No. 257).

Richard D. Grauer, Special Master Report and Recommendation on Construction of
Claim 39 (May 16, 2009) (Dkt. No. 367)

CH1 4732754v.6

The parties agree on some aspects of the claim constructions that are to be extracted from Special Master Janicke's reports, as adopted by the Court, and Special Master Grauer's report, which remains under review by the Court;[1] but, for the purpose of the Court instructing the jury, important differences exist.  Microsoft's identified constructions for the jury are true to the legal conclusions set forth in these reports.  Plaintiffs, however, seek to resolve disputed factual issues by adding language to the constructions or proposing new constructions at the eleventh hour.  Plaintiffs' proposed constructions also seek to incorporate selected statements about disputed facts from Special Master Janicke's report—made in the course of deciding summary judgment motions—as part of the proposed jury instructions.  But, the Court expressly limited its adoption of Special Master Janicke's report to the claim constructions in that report (Dkt. No. 320 at 11), and specifically noted that Mr. Janicke's factual conclusions had no effect: "the conclusive findings of disputed facts are the province of the jury."  (*Id.*)  Finally, Plaintiffs seek to have the Court summarily construe additional terms, raised for the first time on the eve of trial, in an attempt to circumvent factual disputes related to their infringement allegations.  If the Court accepts constructions made by the Special Masters, it should adopt those constructions as identified by Microsoft.

---

[1]  As noted in the Joint Submission on Agreed and Disputed Claim Construction Issues and Request for Teleconference (Jun. 18, 2009) (Dkt. No. 465) at 2 n.1 ("Joint Claim Chart"), Microsoft continues its objections to any constructions other than those proposed in its briefings on claim construction; Appendix A to this submission sets forth the constructions that it continues to believe are legally correct constructions that should be used.  Microsoft simply identifies herein the constructions of Special Masters Janicke and Grauer and does not accept or endorse the validity of either Special Master's constructions.  Microsoft objects to both as a matter of law (the objections to Special Master Grauer's report are still awaiting the Court's resolution).

## I.      "VIDEO GAME COMMUNICATIONS CIRCUIT"

| Agreed Construction | Plaintiffs' Proposed Additional Construction | Microsoft's Identified Additional Construction |
|---|---|---|
| A circuit operatively associated with a local video game and at least one remote video game, without limitation as to such circuit's physical location or attachment to the local video game. | The video game communication circuit need not be physically separate from the local video game. (Grauer, p. 8, 15.) | Claim 39 is not limited in its language to arrangements such as shown in Fig. 2 or to configurations similar to that one.  Claim 39 is not restricted to any particular configuration of the recited elements.  (Janicke, 1/26/07 ¶¶ 66, 70.) |

### A.   Instructions Specific to "Communications Circuit"

Special Master Grauer set forth his recommended conclusions clearly at the outset of his report, and thereafter explained the reasoning underlying his conclusions.  If the Court adopts his recommendations, it should adopt those recommendations as he set them forth, and should not adorn them with selective parts of his underlying reasoning.

Special Master Grauer recommended that video game communication circuit be construed as: "**A circuit operatively associated with a local video game and at least one remote video game, without limitation as to such circuit's physical location or attachment to the local video game.**"  (Dkt. No. 367 at 15.)  The parties agree that this represents his construction, but Plaintiffs seek to add the additional statement that "[t]he video game communication circuit need not be physically separate from the local video game," which they urge as a summary of the reasoning expressed at pages 7-15 of his report.

Mr. Grauer, however, did not make this additional sentence part of his construction of the disputed "video game communications circuit" term, and included many other observations and statements in the course of his report.  Microsoft had sought a

2

construction that required that the video game communications circuit be "separate and distinct" from the video game computer.  Although Special Master Grauer rejected this phrasing for his construction, he did not—as, indeed, he could not—rewrite the claim to provide for the local video game and the claimed video game communication circuit to be the same thing.  *Bicon Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) ("claims are interpreted with an eye toward giving effect to all terms in the claim").

        The claim expressly refers to two things, the local video game and the video game communication circuit, and Mr. Grauer's construction requires that those two things be operatively associated with each other.  Along the way, he observed that "the quoted claim preamble language is not itself restrictive as to where, or in what physical enclosure, the 'communication circuits' must be physically located."  (Dkt. No. 367 at 11.)  Likewise, he further noted that the sole stated advantage of the disclosed invention was "not dependent upon where the claimed communication circuit is physically located or how it is mounted, provided that it is <u>electrically</u> connected between the specified elements of the video game."  (Dkt. No. 367 at 14-15 (emphasis in original).)  In the course of discussing his analysis, consistent with the claim language, he correctly referred to the communication circuit and the video game as different items.  In the end, he consolidated and balanced his construction precisely as Microsoft has stated it in its proposed jury instructions, without the added sentence proposed by Plaintiffs and also without expressly noting that claim 39 requires both the communication circuit and a local video game.

        There is no reason to sweep in, selectively, bits of Mr. Grauer's stated reasoning—except to confuse the jury into believing that the communication circuit and the

video game can be one and the same, a proposition that Mr. Grauer did not propose at any time

and that would be contrary to law.  Plaintiffs' proposed addition to Mr. Grauer's construction

should not be included in the jury instruction.  Alternately, if the Court believes that the jury

should be so instructed, then the Court should also instruct that jury that the communications

circuit and the video game cannot be the same thing.

B.  *Instructions Concerning Figure 2 and Particular Configurations*

Microsoft also identified additional language for the construction of

"communications circuit" from Mr. Janicke's report solely because it applies to claim 39 as a

whole:  "Claim 39 is not limited in its language to arrangements such as shown in Figure 2 or to

configurations similar to that one.  Claim 39 is not restricted to any particular configuration of

the recited elements."  (Dkt. No. 465 at 3.)  Each of these constructions comes directly from

Special Master Janicke's report concerning the overall relationship of claim 39[2] and, as such, was

adopted by the Court through its October 25, 2007 Order.  It may be that it would be better to

instruct the jury separately on the overall make-up of claim 39 rather than making this language

part of the stated construction of the "video game communications circuit."  Microsoft's

identified construction statements, however, are true to Special Master Janicke's constructions

and significant for purposes of comparing claim 39 to the prior art.  Plaintiffs urged these

constructions on the Court and did not object to their statement in Special Master Janicke's

report.  As such, Plaintiffs cannot challenge them now, and the jury should be instructed on these

---

[2] "Claim 39 is not limited in its language to [the preferred embodiment of Figure 2] or to
configurations similar to that one."  (Dkt. No. 257 ¶ 66.).  "[C]laim 39 is not restricted to any
particular configuration of the recited elements."  (*Id.* at ¶ 70.)

points, whether as part of the instruction on the "video game communications circuit" or

separately in the context of claim 39 as a whole.

## II.   PLAINTIFFS' REMAINING PROPOSED CONSTRUCTIONS IMPROPERLY ARE BASED ON SPECIAL MASTER JANICKE'S FACTUAL ANALYSIS FOR DENYING SUMMARY JUDGMENT

As the Court has noted, Special Master Janicke did not delineate the meaning of

the claims in his report as clearly as Special Master Grauer did.  (May 29, 2009 Hr'g at 16:9-10

(excerpt attached hereto as Exhibit 1).)  Part of the confusion results from his concurrently

deciding Defendants' respective summary judgment motions, which required him to assume all

disputed issues of fact in Plaintiffs' favor.  The Court recognized this when it ordered that Special

Master Janicke's "conclusive findings of disputed facts are the province of the jury."  (Dkt. No.

320 at 11.)

Much of what Plaintiffs assert to be part of Special Master Janicke's claim

construction is not claim construction at all.  Instead, the discussion pertains to comparing the

claims to the accused products in resolving the summary judgment motions.  Thus, his

observations about how Sony's accused products work are nothing more than an explanation for

why he recommended denying summary judgment.  But, the Court has already held that the jury

decides the underlying factual issues.  (Dkt. No. 320 at 11); C*rown Packaging Tech., Inc. v.

Rexam Beverage Can Co.*, 559 F.3d 1308, 1321 (Fed. Cir. 2009).

As the Federal Circuit has recognized repeatedly, determination of infringement is

a two-step process involving claim construction followed by application of the claim to the

accused products.  *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir.

2004).  The scope of the claim is an issue of law.  *Id.*  Whether the accused product falls within

the scope of the claim is a question of fact.  *Id.*  In a summary judgment motion, a court performs

both tasks and assumes resolution of all factual issues in favor of the non-moving party.  *Scott v.*

*Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable

inferences in the light most favorable to the party opposing the summary judgment motion."

(quotations omitted)).  Special Master Janicke did both in his recommendation.  But, Plaintiffs

did not, themselves, move for summary judgment.  Thus, their success in avoiding summary

judgment simply showed that disputed issues of fact existed on the issue of infringement.

　　　　　The Court recognized this in its August 21, 2008 order when it held that Special

Master Janicke's *factual* recommendations were not conclusive:  "Because only the defendant

moved for summary judgment, the Court construed the facts in the light most favorable to the

plaintiff.  That does not mean that the defendant is precluded from challenging these factual

conclusions at trial. . . .  Microsoft has the prerogative to challenge the disputed facts in the

case."  (Dkt. No. 320 at 11 (quotation omitted).)

　　　　　Plaintiffs consistently attempt to incorporate Special Master Janicke's assumed

factual conclusions based on drawing all permissible inferences in plaintiffs' favor as if they

were as legal conclusions.  While Special Master Janicke was not as clear as Special Master

Grauer in his legal conclusions, he did set out a pattern that allows the Court to easily distinguish

between factual assertions and conclusions of law.  On pages 3-5 of Special Master Janicke's

report, he lists his "Summary of recommendations," which includes various definitions for

"filtering," "voice over data circuit," and "communication signals."  (Dkt. No. 257 at 4-5 (¶¶ 7-

10).)  These are legal conclusions as to the meaning of those terms and should be followed if the

Court is adopting the Special Master's constructions supplemented only to the extent he made

CH1 4732754v.6

additional explicit statements elsewhere in the Report as to what claim 39 "requires."  Thus, when Special Master Janicke noted in various parts of his report that "claim 39 requires" a particular feature, that is also a legal conclusion as to the scope of claim 39.  Whether claim 39 covers an accused product, however, is an issue of fact.  Thus, the constructions in paragraphs 7-10 of the summary, and the construction in paragraph 60 are legal conclusions.  Virtually all of the remainder of his report is factual analysis performed in the backdrop of those legal conclusions.

In contrast to Plaintiffs' proposed jury instructions, each of Microsoft's identified constructions from Special Master Janicke's report is a conclusion of law he made regarding the *meaning* of claim terms—specifically, what claim 39 "requires" and it does "not require"—and is not their application to facts in the case.  Accordingly, the Court should reject Plaintiffs' attempts to take factual issues away from the jury and use Microsoft's identified constructions where there is any conflict.

A.  *"Electrically Connected"*

| Plaintiffs' Proposed Additional Construction | Microsoft's Position |
|---|---|
| Electrical connections are usually understood in the sense of being operatively connected in some way, possibly with the presence of intervening circuit elements. (Janicke, 1/26/07 ¶ 63.) | No construction has been undertaken and none is necessary. |

Prior to the Final Pretrial Conference, Plaintiffs proposed that "electrically connected" needed to be construed, and Microsoft did not contest having the Court construe that term.  At the Conference, Plaintiffs withdrew their proposal to construe "electrically connected"

CH1 4732754v.6

because they did not believe there was a dispute after they had "taken some further discovery and understood the positions."  (May 29, 2009 Hr'g at 5:11-15 (Ex. 1).)  Microsoft again did not contest that result.  (May 29, 2009 Hr'g at 5: 21 (Ex. 1).)  Now that it is time to draft instructions for the jury, Plaintiffs urge, for the first time, that the Court has already construed "electrically connected."  Plaintiffs presumably seek to bolster their infringement proofs by having the jury instructed on a disputed factual issue directed to how the controllers communicate with the accused Xbox consoles and how the consoles communicate with household networks.  This term, however, was never submitted to either of the Special Masters for construction and was not at issue in prior summary judgment motions.  Neither Special Master Janicke nor Special Master Grauer construed the term, and Microsoft contends that the ordinary meaning of "electrically connected" is the proper definition for the jury to employ.

"Electrically connected" is not a complicated term, and the '125 patent does not give it any special or technical meaning.  If the term is to be construed, the Court should give "electrically connected" its ordinary meaning—namely that whatever is being connected is connected in a way that allows for the flow of electricity between the two things being connected.  *See, e.g.*, Rudolf F. Graf, Modern Dictionary of Electronics 235 (7th ed. 1999) ("**electrically connected—**Joined through a conducting path or a capacitor, as distinguished from being joined merely through electromagnetic induction.") (attached hereto as Exhibit 2.)

In any event, Plaintiffs' proposed construction is legally and factually flawed.  Plaintiffs propose to instruct the jury that "[e]lectrical connections are usually understood in the sense of being operatively connected in some way, possibly with the presence of intervening circuit elements."  (Dkt. No. 465 at 3.)  But, with this construction, Plaintiffs improperly seek to

8

replace the claim term "electrically connected" with the very different term "operatively connected."  Thus, Plaintiffs seek to expand the ordinary meaning of "electrically connected" to encompass a connection that is not "electrical."  This would incorrectly render the term "electrically" meaningless and read its limitation out of claim 39, contrary to the law that every claim term is meaningful and that it is improper to read out claim limitations.  *Bicon*, 441 F.3d at 950-51.

Further, Plaintiffs' "construction" is just a clipped segment from Special Master Janicke's summary judgment analysis of the "switch" limitation—a limitation which does not even require an "electrical" connection.  (Dkt. No. 257 at ¶¶ 62-64; '125 patent, col. 13, lns. 41-42 ("a switch (**150**) connected to said first microprocessor (**140**) having at least two positions").)  Moreover, the segment that Plaintiffs clipped was not from the summary of the invention and it was not preceded by a statement that "claim 39 requires."

The words Plaintiffs seek to clip from Special Master Janicke's report arose in the following context.  Microsoft's motion for summary judgment argued that there was no "switch" in the accused Xbox directly connected to a microprocessor.  (Dkt. No. 257 at ¶ 63.)  The sole issue was whether the switch needed to be ***directly*** connected to the microprocessor.  No one disputed the meaning of "electrical connection" beyond whether it required a direct connection or not.  Special Master Janicke found that it did not have to be direct and that there could be circuit elements between the switch and the microprocessor.  (*Id.*)  Mr. Janicke's resolution of the issues presented to him, and adopted by the Court, is set forth completely in the agreed statement of the controlling construction of "switch."  But, he was not presented with, and hence could not have

9

decided, the question whether "electrically" was synonymous with "operatively," as Plaintiffs' new construction proposes.

In any event, Plaintiffs' proposed construction does not make sense and is contrary to the plain meaning of the claim.  Plaintiffs' construction removes the "electrical" requirement from the connection.  If an electrical connection were anything that is "operatively associated in some way," ***it would also encompass non-electrical connections***.  For example, the twist-off cap on a plastic bottle is "operatively associated in some way" to the bottle by being screwed on to the top.  According to Plaintiffs' construction, the cap, on that basis, could be said to be "electrically connected" to the bottle via the screw threads on the bottle.

Plaintiffs hope to read out the express claim limitation that the connection be "electrical."  This is not proper.  *Bicon*, 441 F.3d at 950-51.  Accordingly, the Court should instruct the jury to give "electrically connected" its ordinary meaning.  Jurors can understand this term, and it requires no last-minute construction.

B.   *"Modem Circuit"*

| Plaintiffs' Proposed Construction | Microsoft's Position |
|---|---|
| The modem circuit may be directly attached to the transmission medium, with the voice over data circuit inboard of it.  (Janicke, 1/26/07 ¶ 69.) | No construction has been made and none is appropriate or necessary. |

Plaintiffs' proposal for "modem circuit" likewise imports factual analysis from Special Master Janicke's report, this time from his discussion of the operability of claim 39 where he denied summary judgment on disputed issues of fact.  Special Master Janicke's observations about how the accused products work were nothing more than an explanation for why he recommended that the Court deny summary judgment.  Also, the portion of Special

Master Janicke's report that Plaintiffs cite was not in his Summary, and he never stated that claim 39 required such an arrangement.  This is another indication that Plaintiffs cite a factual finding.  As noted previously, the Court did not adopt any factual "findings" from Special Master Janicke's report and, as the Court noted, the jury will decide the facts.  (Dkt. No. 320 at 11.)

The Court did not refer a dispute over the proper construction of "modem circuit" to Special Master Janicke.  Rather, the Court referred the summary judgment issue concerning the operability of claim 39 to him.  Indeed, Special Master Janicke did not construe the meaning of "modem circuit."  Instead, he solely addressed whether the claimed video game communications circuit would be operable if the modem were located as Mr. Janicke described and, based on his resolution of that factual issue, recommended denying summary judgment of invalidity based on inoperability—also a factual issue.  *See In re Swartz*, 232 F.3d 862, 863 (Fed. Cir. 2000) ("The utility requirement of § 101 mandates that the invention be operable to achieve useful results. . . .  Lack of utility is a question of fact.")  Plaintiffs, however, did not move for summary judgment on any operability issue.  As a result, the Court's adoption of Mr. Janicke's recommendation to deny the pending summary judgment motions left the factual issue of operability and the factual issues underlying its resolution for the jury to decide.  Plaintiffs now seek to usurp the jury's role on these issues through an instruction on a term whose meaning they never disputed.

Further, Plaintiffs' construction contradicts claim 39's requirement that the communication couplers connect ***the voice over data circuit*** to the medium of communication. ('125 patent, col. 14 lns. 6-8).  The communication couplers do not connect the "modem circuit" to the "medium of communication."  (*Id.*)  Thus, by seeking this construction for "modem

circuit," Plaintiffs attempt to obviate this clear requirement and corresponding limitation of claim 39.

C. *"Voice Over Data Circuit."*

| Plaintiffs' Proposed Construction | Microsoft's Identified Construction |
|---|---|
| Any circuit that allows transmission of voice signals and communication signals over the same transmission medium.  (Claim 39; Janicke, 1/26/07 ¶ 8, 69 87.) | Any circuit that allows transmission of voice signals and communication signals over the same transmission channel.  The voice over data circuit as recited in claim 39 requires not only that voice and data be filtered from each other in the voice over data circuit, but that both types of signals then pass through the voice over data circuit to the modem circuit 114.  (Janicke, 1/26/07 ¶ 8, 60.) |

Special Master Janicke defined the term "voice over data circuit" in his report: "In claim 39, 'voice over data circuit' should be read to mean any circuit that allows transmission of voice signals and communication signals over the same transmission <u>channel</u>."  (Dkt. No. 257 ¶ 8 (emphasis added).)  Microsoft's identified construction recites this construction from Special Master Janicke's summary verbatim.  Plaintiffs' proposed construction, however, replaces the word "channel" with "medium."  (Dkt. No. 465 at 4 ("Any circuit . . . over the same transmission *medium*." (emphasis added).)  This is contrary to the plain language and meaning of the Special Master's construction.  Moreover, any dispute that Plaintiffs' may have had with Mr. Janicke's use of the term "channel" is untimely, as they did not object to his recommended construction prior to its adoption by the Court.  Fed. R. Civ. P. 53(f)(2).  It is wholly inappropriate for Plaintiffs over two years later to seek to modify the construction from the manner in which the Special Master expressly stated it.

Further, the Special Master noted in the body of his report that "***claim 39 requires*** not only that voice and data be filtered from each other in the voice over data circuit, but that both types of signals then pass through the voice-over-data circuit to the modem circuit 114." (Dkt. No. 257 ¶ 60 (emphasis added).)  Plaintiffs' proposed construction ignores Special Master Janicke's statement that claim 39 ***requires*** that the separated voice and data signals then pass through the voice over data circuit to the modem circuit.  Unlike the bits of Mr. Janicke's report concerning factual issues that Plaintiffs seek to import into the jury instructions, this is an unequivocal statement from the Special Master as to what the disputed voice over data circuit term of claim 39 **requires**—by definition, that is claim construction, and is what the jury should be instructed.  Again, this is a construction that Plaintiffs have never challenged previously, and instead urged the Court to adopt.

D.  *"Communication Signals"*

| Plaintiffs' Proposed Construction | Microsoft's Identified Construction |
|---|---|
| Signals that have been derived from a game's control signals and then are sent to the remote game in some suitable format.  Their form is not limited to any particular arrangement of originating or final wires or bits. (Janicke, 1/26/07 ¶ 79.) | Electrical signals representing game movements by players.  (Janicke 1/26/07 ¶ 9.) |

Special Master Janicke defined "communication signals" in the Summary of his Recommendations:  "In claims 15, 27, and 39, 'communication signals' should be read to mean electrical signals representing game movements by players.  There is no requirement that such signals have been converted from parallel to serial form."  (Dkt. No. 257 ¶ 9.)  This is precisely

CH1 4732754v.6

the wording Microsoft has identified with the exception of the last sentence,[3] and Plaintiffs offer

no reason to expand on it as to any issue expected to be tried at this time.

    The communication signals term is one in which Special Master Janicke

summarized his analysis succinctly in the straightforward recitation at the outset of his report.  In

that effort, he captured the resolution of the dispute that had been put to him, which was whether

the "communication signals" as stated in claim 39 were limited to player movements signals that

had been converted from parallel to serial.  That issue he resolved, and no other issue was

presented.  Plaintiffs nonetheless seek to inject pieces of his reasoning as he formulated his

construction conclusion that he then articulated clearly.  Plaintiffs ignore the definition in Special

Master Janicke's summary.  Also, Special Master Janicke never stated that claim 39 "required"

Plaintiffs' construction.  He did, however, say that that "'communications signals' *should be read

to mean* electrical signals representing game movements by players."  (Dkt. No. 257 ¶ 9.)  This

is the appropriate construction from Special Master Janicke's report.

---

[3]  Microsoft removed the last sentence from its construction because it does not intend to make
an issue at trial of any conversion from parallel to serial form.  Thus, instructing the jury as such
would be meaningless and unnecessarily potentially confusing.

*E.   "Filtering Voice Signals from Communication Signals"*

| Plaintiffs' Proposed Construction | Microsoft's Identified Construction |
|---|---|
| Separating voice signals from communication signals.  There is no requirement that either signal be eliminated from further processing. (Janicke, 1/26/07 ¶ 7.)  For example, packet headers may be used to separate voice signals from communication signals for final processing so that voice signals do not intrude as game commands and vice-versa.  (Janicke, 1/26/07 ¶ 59.) | Separating one signal type from the other, while preserving both and discarding neither.  (Janicke, 1/26/07 ¶ 59.) |

Special Master Janicke noted that "[i]t is clear, therefore, from both the claim and the specification, that 'filtering' signifies separating one signal type from the other, while preserving both and discarding neither."  (Dkt. No. 257 at ¶ 59.)  If the Court follows his recommendation, this is the appropriate construction.  (Dkt. No. 465 at 5.)  Further, it is not appreciably different from the first half of Plaintiffs' proposed construction:  "Separating voice signals from communication signals.  There is no requirement that either signal be eliminated from further processing."  (Dkt. No. 465 at 5.)  Indeed, these two statements are virtually identical recitations, simply taken from two different pages of Mr. Janicke's report.

The error in Plaintiffs' proposal lies in their effort to incorporate Special Master Janicke's summary judgment factual analysis into the claim construction by inserting a selective "example" into the jury instruction:  "For example, packet headers **may** be used to separate voice signals from communication signals for final processing so that voice signals do not intrude as game commands and vice versa."  (Dkt. No. 465 at 5 (emphasis added).)  Further, Plaintiffs do not cite Special Master Janicke's summary or any line that states that claim 39 "requires" a

particular element.  Plaintiffs again inject factual discussion from Special Master Janicke's

discussion related to denying Sony's motion for summary judgment of noninfringement.  (Dkt.

257 at ¶ 59.)

Sony moved for summary judgment because its systems transmit voice data and

game data in separate packets and that, therefore, there is no voice over data circuit meeting the

claim requirements.  The Special Master's Report recommended denial of this motion for

summary judgment, ***leaving the issue to the jury***.  The Special Master did not, and could not,

conclusively determine that Sony's system met the "filtering" limitation.  Plaintiffs misapprehend

the nature of a summary judgment motion, when they argue that this means that a digital routing

system of the kind employed by **Sony** (i.e., the use of packet headers) infringes claim 39 of the

'125 patent.  Plaintiffs did not move for summary judgment of infringement.  Hence, the most

that the Special Master could have decided was that triable issues of fact existed drawing all

permissible inferences in Plaintiffs' favor.  *Scott*, 550 U.S. at 378.

Plaintiffs try to circumvent the fact that the denial of summary judgment left

factual issues for trial by arguing that the Special Master's discussion of the facts of Sony's

system and the application of the claims to that system constitutes claim construction.  But,

plainly, it is not.  As the Federal Circuit has recognized repeatedly, determination of

infringement is a two-step process involving claim construction followed by application of the

claim to the accused products.  *Power Mosfet*, 378 F.3d at 1406.  The Special Master's

observations as to whether Sony's system ***may*** infringe claim 39 is plainly the latter and not the

former.  The Court held that the jury is to make those factual determinations.  (Dkt. No. 320 at

11.)  Such an assertion is not appropriate as a jury instruction on the meaning of a claim term.

16

*F.  "Transmitting Both to Said Modem Circuit"*

| Plaintiffs' Proposed Construction | Microsoft's Position |
|---|---|
| Sending outgoing voice signals and communication signals to the modem for appropriate modulation and transmission.  (Janicke, 1/26/07 ¶ 60.) | Any necessary construction is subsumed within "voice over data circuit" and "filtering." |

Claim 39 requires "a voice over data circuit (**134**) for filtering voice signals from communication signals and for transmitting both to said modem circuit (**114**)."  Although the parties previously disputed the meaning of the voice over data circuit and the term "filtering," the phrase "transmitting both to said modem" has never been separately an issue.  It has been treated consistently as a part of the stated function for the voice over data circuit and a part of the stated construction of that element.  Nonetheless, Plaintiffs now ask the Court to import additional limitations into "transmitting both to said modem circuit" by limiting this phrase to situations where the voice over data circuit is sending signals to the modem only in the outgoing direction.  But, the word "outgoing" appears nowhere in the claim or in the entire '125 patent.  Claim 39 simply does not *require* that the voice over data circuit send *only* outgoing voice signals and communication signals to the modem, and neither Special Master has construed it that way.

In support of their construction, Plaintiffs point to Special Master Janicke's factual analysis of Sony's motion for summary judgment.  In paragraph 60 of his report, Special Master Janicke described a potential alternative embodiment in response to Sony's argument that the claim would be invalid because a system that satisfied the voice over data element would be impossible to construct.  As discussed above, inoperability is a factual issue, and the denial of summary judgment on this basis left the issue for the jury.  Moreover, Special Master Janicke

17

never ruled that claim 39 ***required*** this embodiment.  At most, Special Master Janicke assumed a

factual situation on a summary judgment issue, and, as noted *supra*, the Court's August 21, 2008

order plainly states that the Court will disregard Special Master Janicke's factual conclusions for

the purposes of jury instructions since the jury will decide the factual issues in the case.  (Dkt.

No. 320 at 11.)


/s/ Laura L. Donoghue

Robert J. Franzinger (P25539)                David T. Pritikin
William F. Kolakowski III (P55906)           Richard Cederoth
**DYKEMA GOSSETT PLLC**                       Laura L. Donoghue
400 Renaissance Center                       **SIDLEY AUSTIN LLP**
Detroit, MI 48243-1668                       One South Dearborn Street
(313) 568-6690                               Chicago, IL 60603
rfranzinger@dykema.com                       (312) 853-7000


Dated: June 22, 2009                         *Attorneys for Defendant*
                                             *MICROSOFT CORPORATION*

CH1 4732754v.6

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 22, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

John S. LeRoy
jleroy@brookskushman.com

Thomas A. Lewry
tlewry@brookskushman.com

Marc Lorelli
mloreli@brookskushman.com

Marc A. Cantor
mcantor@brookskushman.com

Douglas C. Salzenstein
dsalzenstein@honigman.com

Richard E. Zuckerman
rzuckerman@honigman.com

William F. Kolakowski, III
wkolakowski@dykema.com


<u>/s/Laura L. Donoghue</u>

David T. Pritikin
Richard Cederoth
Laura L. Donoghue
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
<u>ldonoghue@sidley.com</u>

CH1 4732754v.6

## APPENDIX A

Microsoft continues to urge the Court to adopt the following claim constructions, proposed in its 2005 summary judgment pleadings (Dkt. Nos. 73 and 110), its objections to Special Master Janicke's report  (Dkt. No. 217), 2009 claim construction briefs (Dkt. Nos. 342 and 345), and its outstanding objections to Special Master Grauer's report (Dkt. No. 414). Microsoft continues to request that the Court adopt the following claim constructions for the reasons set forth in its respective pleadings, which are incorporated herein by reference.

| Claim Term or Phrase | Construction |
|---|---|
| video game communications circuit | The claim preamble is limiting.  The claimed "video game communications circuit" and the components listed in the body of the claim are separate and distinct from the video game computer, to which the video game communications circuit is attached.  (Dkt. No. 342 at 4-8; Dkt. No. 345 at 1-3; Dkt. No. 414 at 2-9.)  Claim 39 requires an arrangement of the recited elements as shown in Figure 3. |
| first microprocessor (**140**) | A microprocessor programmed to convert parallel command signals from the game controllers into serial communication signals and vice versa.  (Dkt. No. 342 at 9-12; Dkt. No. 345 at 3-4; Dkt. No. 414 at 9-10.) |
| two player port logic circuits (**108, 124**) | Shift registers.  (Dkt. No. 342 at 12-14; Dkt. No. 345 at 4-5; Dkt. No. 414 at 10-12.) |
| switch (**150**) | The switch must be directly connected to an input of the "first microprocessor" to control which input port receives local player inputs and which receives remote player inputs.  (Dkt. No. 73 at 15-16.) |
| voice over data circuit (**134**) for filtering voice signals from communication signals | A circuit that selectively blocks parts of incoming signals based upon their frequency characteristics. (Dkt. No. 73 at 9-14, 20; Dkt. No. 217 at 7-9.) |
| communication couplers (**L1, L2**) | Inductors that physically connect the voice over data circuit to the medium of communication with no intervening circuitry.  (Dkt. No. 342 at 14-17; Dkt. No. 345 at 5; Dkt. No. 414 at 13-15.) |