UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| PETER A. HOCHSTEIN, et al., | ) ) | Case No. Civil Action No. 04-73071; 08-10331 |
|  | ) |  |
| Plaintiff, | ) | HONORABLE PAUL D. BORMAN |
|  | ) |  |
| v. | ) | MAGISTRATE JUDGE DONALD A. |
|  | ) | SCHEER |
| MICROSOFT CORPORATION, et al., | ) |  |
|  | ) |  |
| Defendant. | ) ) | |

**MICROSOFT CORPORATION'S OBJECTION TO THE
SPECIAL MASTER'S REPORT AND RECOMMENDATION ON PLAINTIFFS'
MOTION FOR RECONSIDERATION OF CLAIM CONSTRUCTION (DKT. 518)**

David T. Pritikin
Richard A. Cederoth
Laura L. Donoghue
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, Illinois 60603
(312) 853-7000
Fax (312) 853-7036

Robert J. Franzinger (P25539)
William F. Kolakowski (P55906)
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, Michigan  48243
(313) 568-6990
rfranzinger@dykema.com

*Attorneys for Defendant
Microsoft Corporation*

Pursuant to Federal Rule of Civil Procedure 53(f)(2) and this Court's December 15, 2009 Order (Dkt. 519), defendant Microsoft Corporation ("Microsoft") objects to the recommendations of Special Master Richard D. Grauer's report.  For the reasons set forth below, the Court should:

1) Not adopt Special Master Grauer's recommendation that reconsideration of the construction for **"**electrically connected**"** is appropriate;

2) Not adopt Special Master's Grauer's new construction for "electrically connected," and

3) Maintain the Court's original claim construction for "electrically connected" to mean:

**"Joined by an electrically conductive connector or a capacitor, as distinguished from being joined merely through electromagnetic induction or waves."**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

CASES                                                                              Page(s)

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
 268 F.3d 1352 (Fed. Cir. 2001)........................................................................18

*CVI/Beta Ventures, Inc. v. Tura LP*,
 112 F.3d 1140 (Fed. Cir. 1997)..........................................................................6

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
 302 F.3d 1352 (Fed. Cir. 2002)........................................................................18

*Markman v. Westview Instruments*,
 52 F.3d 967 (Fed. Cir. 1995)..................................................................7, 8, 15

*Pfizer, Inc. v. Teva Pharms USA, Inc.*,
 429 F.3d 1364 (Fed. Cir. 2005)........................................................................18

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)............................................................... passim

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996)................................................................7, 8, 15


FEDERAL RULES

Federal Rule of Civil Procedure 26(a)(2) ...................................................................18


COURT ORDERS

Directions to Parties re Claim Construction Hearing Set for Oct. 23, 2009
 (Sept. 15, 2009) (Dkt. 515) ........................................................................9, 11


OTHER AUTHORITIES

*Anatomy of a Patent Case* (Federal Judicial Center 2009)...........................................12

U.S. Patent No. 5,292,125...........................................................................................4, 5

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................1

ARGUMENT.......................................................................................................2

I.     THE SPECIAL MASTER MISINTERPRETED THE INTRINSIC EVIDENCE
       AND ERRED WHEN HE CONCLUDED THAT THE USE OF THE TERM
       "ELECTRICALLY CONNECTED" IN THE PATENT WAS INCONSISTENT .....2

II.    THE SPECIAL MASTER FURTHER ERRED IN CONSIDERING EXTRINSIC
       EVIDENCE THAT WAS PRESENTED FOR THE FIRST TIME AT THE
       OCTOBER 23, 2009 HEARING AND NOT PART OF THE RECORD...................8

III.   THE SPECIAL MASTER ERRED IN PLACING UNDUE RELIANCE ON THE
       TIMING OF MICROSOFT'S CLAIM CONSTRUCTION POSITION IN
       REVERSING HIS PRIOR CONSTRUCTION ...........................................15

CONCLUSION ...................................................................................................19

## <u>INTRODUCTION</u>

This Court should reaffirm the claim construction of "electrically connected" adopted at the specific recommendation of the Special Master on July 8 and should not adopt the revised recommendation provided on Plaintiffs' motion for reconsideration.

As explained below, the Special Master's analysis of the relevant facts supports the construction he recommended in July, and that should now be reaffirmed.  In particular, the Special Master found that the intrinsic evidence weighs strongly in favor of his original construction, but the Special Master made a simple error in logic that led him to conclude that the intrinsic evidence was ambiguous.  And, as for proper extrinsic evidence, he likewise found that the dictionary definitions proffered by the parties (one of which he had used for his original claim construction) were consistent.

In the face of this evidence and his own findings, the Special Master should have reaffirmed his original construction and presumably would have done so if he had not been led astray by two irrelevant and legally improper arguments.  First, the Special Master erroneously relied on Plaintiffs' eleventh-hour attorney arguments relating to the relationship between capacitors and transformers as extrinsic evidence offered for the first time at the hearing on the motion for reconsideration.  The advancement and consideration of this argument at that stage violated the Court's order barring new extrinsic evidence.  No expert, from either side, ever presented the technical evidence necessary to support the argument that Plaintiffs' attorney presented at the October 23, 2009 hearing.  As such, counsel's argument not only ran counter to the Court's September 15, 2009 order instructing the parties not to introduce new extrinsic

evidence and to limit their arguments to the existing record, it also resulted in consideration of arguments presented on an incomplete and inaccurate factual record. The Special Master should not have considered these arguments or evidence.

Secondly, the Special Master was, as indicated in his recommendation, heavily influenced by his feeling that Microsoft should not benefit from a claim construction that it had not specifically sought until June 2009. The Special Master cites no authority for the novel proposition that a defendant's failure to advance a particular claim construction argument at some prior stage of the litigation can be taken as evidence, indeed, conclusive evidence, that the position is incorrect as a matter of law. And, in relying on this as a factor – much less the decisive factor – the Special Master exceeded the scope of his reference and was influenced by considerations that are not germane to proper claim construction.

## <u>ARGUMENT</u>

### I.    THE SPECIAL MASTER MISINTERPRETED THE INTRINSIC EVIDENCE AND ERRED WHEN HE CONCLUDED THAT THE USE OF THE TERM "ELECTRICALLY CONNECTED" IN THE PATENT WAS INCONSISTENT

The Special Master's critical findings on use of the term "electrically connected" in the patent weigh strongly against Plaintiffs' position. Thus, he noted that the use of the term in the patent specification (the most important evidence for claim construction) supports Microsoft's construction.

> Summarizing, with the exception of the title of the invention, <u>every</u> disclosed connection that the patent describes as an "***electrical connection***" is a connection in the form of an electrically conductive wire or line, without any non-conductive gap as occurs in the case of a transformer (utilizing electromagnetic induction) or

a capacitor.  It is never used in the patent to describe or claim a
connection that includes a non-conductive gap, such as exists in
isolation transformers that function using electromagnetic
induction.

(Special Master's Report and Recommendation on Pls' Mot. For Reconsideration of Claim

Construction (Dec. 14, 2009) ("Dkt. 518") at 14 (emphasis in original).)

As a legal matter, the Special Master correctly discounted the significance of the title.

And he further concluded that the type of component now at issue (a transformer) was ***not***

described in the patent or claims as "electrically connected":

Because isolating transformers L1 and L2 operate by
electromagnetic induction, the phenomenon that is at the heart of
the present claim construction controversy, it is particularly
significant to the present analysis to consider the terminology that
the patent <u>did</u> use to describe and claim those components.  The
specification describes the function of these transformers as
"<u>coupling</u>" (or "couples") the associated elements, not "***electrically
connecting***" or even "connecting" (8:45-49).

(Dkt. 518 at 14 (emphasis in original).)  He also concluded that "the pattern of using terminology

<u>other</u> than "***electrically connected***" to describe the connection of the isolation transformers to

associated elements, coupled with the use of that term <u>only</u> to describe direct and conductive

connections, weighs against Hochstein's interpretation."  (Dkt. 518 at 16 (emphasis in original).)

The Special Master's stated reason for not resolving the controversy on the basis of the

intrinsic evidence alone was his observation that a different term – "connected" – is used in the

patent to describe both electrically conductive and non-conductive connections.  But this is

irrelevant as a matter of both law and logic:  "electrically connected" is a subset of "connected."

In other words, all "electrical connections" are "connections," but not all "connections" are

"electrical connections."  To take a simple analogy, all bananas are fruits, but not all fruits are

bananas.  Whenever the patent discussed "electrical connections," the Special Master found that

"electrical connections" referred consistently to electrically conductive connections.  The fact

that the patent also generically refers to them as "connections" is in no way inconsistent, and

certainly does not undercut the clear meaning of "electrically connected."

     As the Federal Circuit in *Phillips v. AWH Corp.* noted, the context of how "electrically

connected" and "connected" are used in claim 39 is "highly instructive."  415 F.3d 1303, 1314

(Fed. Cir. 2005) ("To begin with, the context in which a term is used in the asserted claim can be

highly instructive.")  Claim 39 uses "electrically connected" for three separate elements:

- a first microprocessor (140) ***electrically connected*** to one set of player controls (20), two player ports (A, B) and an oscillating circuit (Y1, C2, C3, R2);

- two player port logic circuits (108, 124) ***electrically connected*** between said first microprocessor (140) and the two player ports (A, B);

- a modem circuit (114) ***electrically connected*** to said first microprocessor (140) for bilaterally transmitting communication signals to and from said first microprocessor (140).

(U.S. Pat. No. 5,292,125, col. 13, ln. 35 – col. 14, ln. 2 (Declaration of Laura L. Donoghue (Jan.

4, 2010) ("Donoghue Decl."), Exh. 1)) (emphasis added).)  With respect to these three elements,

the Special Master correctly observed that "[i]n <u>every</u> one of those uses of the term ["electrically

connected"] in claim 39, the corresponding '***electrical connection***' disclosed in the specification

and drawings is by means of an electrically conductive wire or line, with no disclosed gap as

would exist if there were a capacitor or transformer interposed between the connected

components."  (Dkt. 518 at 9-10.)

4

Claim 39 uses the term "connected," without the "electrically" modifier, for two separate elements:

- a switch (150) **connected** to said first microprocessor (140) having at least two positions;

- communication couplers (L1, L2) for **connecting** said voice over data circuit (134) to the medium of communication.

('125 patent, col. 13, ln. 41-col. 14, ln. 8 (emphasis added).)  For these two elements, claim 39 uses the general terms "connecting" or "connected" to define generic "connections" without regard to whether the connection is "electrical."  As the Special Master notes, the specification describes L1 and L2 as isolating transformers that operate by electromagnetic induction.  (*Id.* at 14.)  Thus, the patentee used the term "connecting," without the "electrical" modifier, to claim the inductively connected communication couplers.  The choice of "connecting," without the "electrical" qualifier, is strong evidence that the patentee sought to make a distinction between generic "connections" and "electrical connections."  *See Phillips*, 415 F.3d at 1314.

Further, as the Special Master notes, the switch (150) in the specification is shown connected to the microprocessor with a conductive wire.  (*Id.* at 16.)  The fact that the switch can be electrically connected, as shown in the specification, shows that the patentee chose to use the naked terms "connecting" or "connected" broadly in claim 39 to describe both electrically conductive connections and non-conductive connections.  Thus, because the PTO endorsed this choice by issuing claim 39, infringement can be established even when the switch is not electrically connected to the microprocessor—even though the specification showed the switch

5

solely as electrically connected.  Thus, the context of the use of "electrically connected" within claim 39 is entirely consistent with the remainder of the claim and the patent as a whole.

The Special Master, however, misinterpreted the use of "connected" in the "switch" limitation.  Because the switch described in an embodiment of the patent was connected to the microprocessor with an electrically conductive connection, and claim 39 required just a "connection," the Special Master erroneously concluded that the patent's use of "electrically connected" was inconsistent and arbitrary.  On that basis, he concluded that it would not be appropriate to follow the canon of construction that "a term repeatedly used in patent claims should be construed consistently throughout."  (Dkt. 518 at 17 (citing *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1140, 1159 (Fed. Cir. 1997).)

The Special Master's analysis is fatally flawed because it rests upon a non-existent inconsistency.  The term "connected" refers to all types of connections – electrical or not.  The electrical connection in the disclosed embodiment between the switch and the microprocessor is still a "connection."  To be consistent, "electrical connections" only need to be a subset of "connections."  To say otherwise would be to say that it is inconsistent to call a banana both a "banana" and a "fruit."  All bananas are fruit, but not all fruits are bananas.  Similarly, all electrical connections are connections, but not all connections are electrical.

The *en banc* Federal Circuit made a similar observation in an example in *Phillips*.  There, the court observed that "the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel."  415 F.3d at 1314.  Similarly, the use of "electrically connected" in claim 39 "strongly implies" that the term "connected" does

not inherently mean connections that are *just* "electrical."  The term "connected" includes "electrical" connections within its scope, but it also includes non-electrical connections, just as the term "baffles" in *Phillips* encompassed baffles made of materials other than steel.

The report illustrates this confusion most clearly when stating "it cannot be concluded that 'connected' and 'electrically connected' are completely interchangeable, nor can it be concluded that they are mutually exclusive, as used in claim 39 of the '125 Patent."  (Dkt. 518 at 19.)  On this basis, unless the terms are "mutually exclusive," "electrically connected" cannot have a narrower or different meaning from "connected."  But "electrically connected" is a subset of "connected," and there is thus no need for the terms to be "mutually exclusive" in order for "electrically connected" to have a narrower meaning.

Once that error in logic is unraveled, the Special Master's analysis of the intrinsic evidence points overwhelmingly and conclusively to the construction he adopted on July 8.  And that should have governed the outcome.  To resort to extrinsic evidence, as the Special Master did, to contradict this clear meaning is indisputably reversible error.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper."); *id.* at 1584 (Reliance on extrinsic evidence "is unnecessary, and indeed improper, when the disputed terms can be understood from a careful reading of the public record."); *see also Phillips*, 415 F.3d at 1324; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  (*See also* Dkt. 518 at 19-20 (citing *Markman*, 52 F.3d at 981; *Vitronics*, 90 F.3d at 1584).)

7

The intrinsic evidence points to one conclusion.  "Electrically connected" requires direct connection through current conducting elements and does not include connections through electromagnetic induction.  The Court should uphold its original claim construction.

**II.     THE SPECIAL MASTER FURTHER ERRED IN CONSIDERING EXTRINSIC EVIDENCE THAT WAS PRESENTED FOR THE FIRST TIME AT THE OCTOBER 23, 2009 HEARING AND NOT PART OF THE RECORD**

The Special Master erred in his analysis with respect to the extrinsic evidence by making three procedural errors.  First, given the clarity of the intrinsic evidence, as shown *supra*, it would be reversible error to endorse the Special Master's construction because his conclusion necessarily relies on extrinsic "evidence" that contradicts the unambiguous intrinsic evidence – in this case, the patent document itself.  *Vitronics*, 90 F.3d at 1583-85; *see also Phillips*, 415 F.3d at 1324; *Markman*, 52 F.3d at 981.  Further, proper interpretation of the intrinsic evidence would have eliminated the need to resort to extrinsic evidence.

If a court uses any extrinsic evidence to illuminate the ultimate claim construction, such extrinsic evidence must be consistent with the clear and unambiguous definition provided by the intrinsic evidence.  *Phillips*, 415 F.3d at 1324.  Indeed, technical dictionaries are preferred over expert testimony.  *Vitronics*, 90 F.3d at 1585.  This may be because a dictionary "has the value of being an unbiased source 'accessible to the public in advance of litigation.'"  *Phillips*, 415 F.3d at 1322 (quoting *Vitronics¸* 90 F.3d at 1585).

The Special Master's original use of Microsoft's proffered dictionary definition in July 2009 was proper because it actually confirmed the intrinsic evidence in showing that "electrically connected" is any sort of electrically conductive connection that excludes electromagnetic

8

induction.  Further, in the present report, the Special Master reconciled the two dictionary

definitions at issue in favor of Microsoft and rejected Plaintiffs' argument that their proposed

definition was inconsistent with Microsoft's:

> Microsoft's Modern Dictionary of Electronics definition states that
> there is no conducting path across the gap between a <u>pair</u> of
> inductors where mutual inductance is occurring, while Hochstein's
> Illustrated Dictionary of Electronics definition is stating that a
> direct path occurs through an "inductance," *i.e.* a <u>single</u> inductor or
> coil according to Dr. Macedonia.  There is no contradiction there;
> the two dictionaries are talking about different arrangements of
> elements.  The first dictionary is technically accurate as to the
> absence of a direct path for electricity between <u>paired</u> inductors via
> electromagnetic induction (as in an isolation transformer); the
> second dictionary is more generic and does not specifically address
> electromagnetic induction or isolation transformers.

(Dkt. 518 at 26.)  The intrinsic evidence, supported by dictionary definitions presented by both

Microsoft and Plaintiffs, conformed to a single result:  that the term "electrically connected" did

not encompass electromagnetic induction.  That should have ended the analysis.

Second, the Special Master went beyond paragraph 2 of the Court's September 15, 2009

order in considering Plaintiffs' new attorney argument as "extrinsic evidence."  (Directions to

Parties re Claim Construction Hearing Set for Oct. 23, 2009 (Sept. 15, 2009) ("Dkt. 515") ¶ 2.)

In that order, the Court specifically instructed the parties that no items of additional extrinsic

evidence "beyond those already of record are to be filed ***or considered.***"  (Dkt. 515 ¶ 2 (emphasis

added).)  In addition, paragraph 3 of that order directed the parties to focus on the intrinsic

evidence at the hearing.  (Dkt. 515 ¶ 3.)

Plaintiffs did not submit any additional declarations, but that did not prevent Plaintiffs from injecting new technical opinions, through their attorney's argument at the October 23, 2009 hearing.  And it did not stop the Special Master from treating those opinions as technical facts without the benefit of *any* expert's opinion.  The key technical fact Plaintiffs' counsel presented focused solely on the presence of a gap in both capacitors and transformers.  Plaintiffs' counsel argued that the gap in a capacitor precluded current from literally flowing through a capacitor.  This premise had no support in the record, but it was accepted as fact by the Special Master at the urging of Plaintiffs' counsel.  Transformers also have a gap.  Plaintiffs' counsel then argued, and the Special Master then accepted that, if current "flows" across a capacitor, "then it seem[s] to also do so in the case of a transformer by means of electromagnetic induction."  (Dkt. 518 at 30.)  This new technical opinion was a critical underpinning to the Special Master's conclusion: "it is my opinion, that the 'ordinary artisan' reading the entire '125 Patent would consider that *a transformer, like a capacitor,* allows electrical current to flow, albeit indirectly, between the components connected to its opposite sides."  (*Id.* at 31 (emphasis added).)

This erroneous recommendation, in part, resulted from an argument that Plaintiffs' counsel, Mr. Thomas A. Lewry, presented at the October 23, 2009 Hearing:

> MR. LEWRY:  . . .
> . . .
> But according to the definition of Microsoft's expert, that circuitry meets the definition of an electrical connection because current flows between the two components; okay?  There are gaps.  There's no question there are gaps in the process.  They are capacitors that have gaps.  There are inductors that have gaps.  Both of them have gaps.  And the current still flows from the modem to the microprocessor.

10

. . .

> MR. LEWRY:  That's right.  If you believe in electrons, there are
> no electrons flowing from A to B.  There's a different dispute.  But
> the same thing's true of capacitor.  There's a gap in the capacitor
> too.  And the same electrons aren't flowing through there, and
> there's no dispute that a capacitor is part of an electrical
> connection.  So the fact of the gap isn't the answer is our point.

(10/23/2009 Hr'g 13:13-14:9 (Donoghue Decl., Exh. 2).)  There was **_nothing_** in the record to

support this attorney argument presented as fact, and the Special Master erroneously treated it as

additional extrinsic evidence to be considered in his analysis.  Further, Plaintiffs' expert, Dr.

Matheson, never made this technical argument in any of his declarations, and to compound the

error, Dr. Macedonia was not given the opportunity to respond to this argument.

This is an improper basis for the noted conclusion, in the first instance, because the

Court's September 15, 2009 order instructed parties to limit their arguments to the existing

record:

> [t]he Court wants to hear the parties' contentions and citations **_to
> existing and supporting evidence_** as to whether any other types of
> electrical circuit elements or forms of signal transmission are to be
> explicitly excluded from, or explicitly included in, the proper
> construction of 'electrically connected' as the term is employed
> three times in claim 39.

(Dkt. 515 ¶ 1 (emphasis added).)  Since Plaintiffs never presented this argument in their briefs,

and Dr. Matheson never presented this opinion in any of his declarations or reports, Plaintiffs

could not possibly have had any "existing and supporting evidence" for this argument.  Indeed,

the Special Master recognized this fact:  "If there is a distinction warranting the Modern

Dictionary of Electronics' differing treatments of capacitors and electromagnetic induction (*i.e.*,

as in transformer), I do not find it in the present record."  (Dkt. 518 at 29.)  The Special Master could not find anything in "the present record" because Plaintiffs raised it, for the first time, at oral argument without any support for it in "the present record."  Accordingly, the Court should disregard the entire "capacitor" argument of the Special Master's report.

Plaintiffs thus circumvented paragraph 2 of the Court's September 15, 2009 order. Having been barred from offering new evidence, they should not have been permitted to dispense with the necessary evidence and simply advance new technical arguments premised on attorney say-so, lacking any support.  "[C]onclusory, unsupported assertions by experts regarding the definition of a claim term, and assertions that are at odds with the claim construction based on the intrinsic record, should be rejected."  *Anatomy of a Patent Case* 76 (Federal Judicial Center 2009) (Donoghue Decl., Exh. 3).  Similarly, conclusory and unsupported attorney argument, couched as extrinsic evidence, should be rejected.

Moreover, Special Master Grauer's reliance on Plaintiffs' additional extrinsic evidence argument tainted his entire recommendation.  The Special Master found that the Modern Dictionary of Electronics definition, upon which he based his original recommended construction, was now, in light of Mr. Lewry's unsupported technical opinion, paradoxical in that the definition "seems to recognize that the gap within a capacitor does not provide a conducting path, yet it still considered that the capacitor provides an 'electrical connection.'  But that definition holds that the gap that exists in a transformer operating by means of electromagnetic induction does <u>not</u> provide an 'electrical connection.'"  (Dkt. 518 at 28.)  To rectify this error, the

12

Court should completely disregard the Special Master's report because its conclusion relies on a violation of the Court's order.

Third, the Special Master erred in considering the new argument without giving Microsoft the opportunity to present rebuttal evidence.  In fact, the Special Master, on repeated occasions, lamented the lack of a full and complete record.  Indeed, given the last-minute nature of Plaintiffs' argument, the Special Master recognized that "[t]he parties' experts have not addressed this seeming paradox in the Modern Dictionary of Electronics' definition."  (*Id.*)  The parties' experts never had a chance to address it because it was raised improperly, for the first time, at the October 23 hearing.  Instead of asking the parties to submit more evidence, the Special Master proceeded in a vacuum with of Plaintiffs' improperly presented attorney argument as the only extrinsic "evidence."  Given the Special Master's heavy reliance on Plaintiffs' capacitor-transformer gap argument, at the very least, the Court should allow Microsoft to present an expert declaration or expert testimony to explain the Special Master's paradox.[1]

Indeed, the absence of a developed record led the Special Master to make substantive and technical errors in attempting to explain the perceived paradox in the Modern Dictionary of

---

[1]  Microsoft has contemporaneously filed an expert declaration to the extent the Court does not strike or disregard the Special Master's report related to the "capacitor-gap" argument.  Microsoft believes that it is within its rights to submit the declaration in light of the Special Master's reliance on Plaintiffs' new evidence but recognizes that leave may be required under the Court's September 15, 2009 order and hereby requests such leave.  Of course, if the Court decides to disregard Plaintiffs' and the Special Master's new argument, there would be no need for the Court to review Dr. Macedonia's declaration.  In fairness, however, Microsoft clearly should be given the right to respond to technical arguments first advanced at the hearing.

Electronics definition.  As shown by Dr. Macedonia's attached declaration, contrary to the Special Master's assertion, current **does** flow across the gap of a capacitor.  Thus, the entire underlying premise for the Special Master's conclusion is incorrect.  The critical difference between a capacitor and transformer is that a capacitor has an **electric field** in the gap between its plates whereas a transformer has a magnetic field between the two coils of wires.  Thus, even though the gap in a capacitor consists of non-conducting material, the presence of the electric field in a capacitor represents a continuous link that allows for current to conductively flow through the capacitor.

In contrast, a transformer creates a current in the adjacent inductor by a magnetic field in the gap between the inductors.  There is no "electricity" flowing across the gap between the two inductors.

One reason a capacitor is considered part of an "electrical connection" in the Modern Dictionary of Electronics definition is that an electric field exists within the non-conducting material in the gap, and it is through that electric field that electric charge moves from one plate to the other.  The gap in a transformer does not have such a field and does not have electric charge (i.e. current) moving from one side to the other, and hence a transformer has no direct conductive path.

14

III.   **THE SPECIAL MASTER ERRED IN PLACING UNDUE RELIANCE ON THE TIMING OF MICROSOFT'S CLAIM CONSTRUCTION POSITION IN REVERSING HIS PRIOR CONSTRUCTION**

The Court tasked the Special Master with construing "electrically connected."  This involves looking at the intrinsic evidence of the patent and then, only if the intrinsic evidence is ambiguous, at extrinsic evidence.  *Vitronics*, 90 F.3d at 1583-85.  *See also Phillips*, 415 F.3d at 1324; *Markman*, 52 F.3d at 981.  The Special Master, however, allowed the timing of Microsoft's claim construction arguments to permeate and influence his analysis of Dr. Macedonia's opinions and Microsoft's arguments as a whole:

> However, in accord with Hochstein's current submissions and arguments, I find particularly illuminating the opinions that Microsoft's expert, Dr. Macedonia, expressed *(or failed to express)* <u>before</u> the focus shifted from waves in wireless controllers to electromagnetic induction in isolation transformers.  ***Because of that timing, it is my opinion that those original positions carry enhanced credibility and are entitled to additional weight.***

(Dkt. 518 at 21 (emphasis added).)  The Special Master went on to state that since Plaintiffs have asserted that the Xbox infringes through the use of wired modem connections, presumably through inductive connections, and because Dr. Macedonia never offered a noninfringement opinion based on the unconstrued "electrically connected" term, Dr. Macedonia and Microsoft's silence is evidence that "electrically connected" includes inductive connections.  (Dkt. 518 at 21.)

But the timing of Microsoft's arguments on claim construction is irrelevant and not proper extrinsic evidence at all.  Extrinsic evidence is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."

*Phillips*, 415 F.3d at 1317.  Critically, this is not a situation where an expert asserted one position and then reversed himself.  Rather, here Dr. Macedonia did not say anything one way or the other.  What an expert did not say is not evidence.  The Special Master improperly relied on Dr. Macedonia's and Microsoft's seeming "failure" as being "strongly suggestive of the conclusion that the ordinary artisan after reading the entire patent would conclude that ***'electrically connected'*** <u>does</u> encompass connections that indirectly transmit or couple signals and electrical energy through capacitors and isolation transformers."  (Dkt. 518 at 23-24 (quotation omitted).) The Special Master made the following irrelevant observations, which he allowed to taint his decision to reverse his original construction:

> Dr. Macedonia holds three degrees in electrical engineering, telecommunications and computer science (Dkt. 488-2, ¶1).  It is not credible that [Dr. Macedonia] and the entire Microsoft litigation team, after repeatedly focusing on the meaning of "***electrically connected***" and other non-infringement defenses based on that claim limitation, would overlook this newly raised one if, as they now allege, "the ordinary artisan after reading the entire patent" (*Phillips*, *supra*) would conclude that "***electrically connected***" does not encompass a connection including an isolation transformer located inside the Xbox/Xbox360 consoles. . . .
> The history and context of Microsoft's positions on the construction of "***electrically connected***" are strongly suggestive of the conclusion that "the ordinary artisan after reading the entire patent" (*Phillips, supra*) would conclude that "***electrically connected***" <u>does</u> encompass connections that indirectly transmit or couple signals and electrical energy through capacitors and isolation transformers, these components being commonly used in equipment of the type disclosed in the '125 Patent.

(Dkt. 518 at 23-24.)

The only fair reading of the above excerpts is that the Special Master significantly relied on this "silence," to in effect, declare, *sua sponte*, that Microsoft somehow waived its right to benefit from the Special Master's original claim construction simply because Microsoft's earlier expert reports were silent on that issue.  The Special Master cites no authority for the novel proposition that a defendant's failure to articulate a particular claim construction argument to support a non-infringement defense at an earlier stage in the litigation can be taken as evidence, indeed, conclusive evidence, that the position is incorrect.

In fact, this waiver/estoppel theory flies in the face of the Court's decision to construe "electrically connected," over Microsoft's objection, in the first place.  **Neither party** had advanced any claim construction arguments for "electrically connected" until the summer of 2009.  Indeed, while the Special Master points to Dr. Macedonia's silence on the issue, Plaintiffs' expert, Dr. Matheson, and Plaintiffs themselves similarly never articulated an opinion over the five years of this litigation as to how an isolation transformer is an electrical connection under any proper construction.  Indeed, Dr. Matheson's current opinions **still** fail to disclose such an opinion even though it is Plaintiffs' burden to prove infringement and describe how infringement occurs.

But the Special Master's report creates a "heads I win, tails you lose" scenario:  Plaintiffs were allowed to articulate their new claim construction position with respect to isolation transformers and to present a completely new theory at the October 23 hearing, but Microsoft's position was disregarded because it was made in response to Plaintiffs' new-found arguments.

By ordering the construction of the claim term "electrically connected," at the Plaintiffs' request, the Court specifically invited Microsoft's (and Plaintiffs') claim construction arguments.

Moreover, Microsoft did nothing improper.  Thus, there was no need for Dr. Macedonia to state any opinion as to the proper construction of "electrically connected" because expert reports under Fed. R. Civ. P. 26(a)(2)(B)(i) only disclose "a complete statement of all opinions *the witness will express* and the basis and reasons for them." (emphasis added).  Plaintiffs alone bore the burden to show that the accused system meets the claims, and it was <u>Plaintiffs</u> who sought to construe "electrically connected."  At that moment, Plaintiffs opened the door to the possibility that the Court would construe the term in a way that precipitated new noninfringement (and invalidity) possibilities.

The Court granted Plaintiffs' request for construction of "electrically connected."  It is well-settled that courts have discretion over the timing of claim construction.  *See*, *e.g.*, *Ballard Med. Prods., v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol.").  The Federal Circuit has also recognized that "[d]istrict courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."  *Pfizer, Inc. v. Teva Pharms USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (quoting *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)).

Nevertheless, the Special Master seeks to preclude Microsoft from the full benefit under the claim construction that Plaintiffs urged the Court to undertake.  Claim construction is not a one-sided proposition; just as Plaintiffs sought to improve their case position through the construction they hoped the Court would adopt and by making their own claim construction arguments for the first time, Microsoft is entitled to any benefit to its non-infringement or invalidity positions that the Court's construction provided.

Once Plaintiffs asked the Court to construe "electrically connected," construction of that term became an issue of law for the Court to decide, and Plaintiffs assumed the risk that the Court would decide that issue in a way that precluded infringement.  The consideration of Microsoft's failure to raise claim construction arguments before Plaintiffs, themselves, raised the claim construction issue to which those arguments relate is improper.  Moreover, it is not "extrinsic evidence" upon which the Court, or the Special Master, may rely in performing claim construction.  *See Phillips,* 415 F.3d at 1317.  As such, the Special Master's reliance thereon is incorrect as a matter of law.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should reject the Special Master's recommendation and maintain its original construction of "electrically connected:" to mean: **"Joined by an electrically conductive connector or a capacitor, as distinguished from being joined merely through electromagnetic induction or waves."**

19

<u>s/ Laura L. Donoghue</u>
Robert J. Franzinger (P25539)
William F. Kolakowski III (P55906)
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI 48243-1668
(313) 568-6690
rfranzinger@dykema.com

Dated:  January 4, 2010

David T. Pritikin
Richard Cederoth
Laura L. Donoghue
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Attorneys for Defendant*
*MICROSOFT CORPORATION*

20

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

John S. LeRoy
jleroy@brookskushman.com

Thomas A. Lewry
tlewry@brookskushman.com

Marc Lorelli
mloreli@brookskushman.com

Marc A. Cantor
mcantor@brookskushman.com

Douglas C. Salzenstein
dsalzenstein@honigman.com

Richard E. Zuckerman
rzuckerman@honigman.com

s/ Laura L. Donoghue
David T. Pritikin
Richard Cederoth
Laura L. Donoghue
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
ldonoghue@sidley.com

CH1 5138719v.1